## NEILSON v. COAL, CEMENT & SUPPLY CO.

(Circuit Court of Appeals, Fourth Circuit. May 15, 1903.)

No. 466.

1. ADMIRALTY PRACTICE—PRESERVING TESTIMONY FOR USE ON APPEAL.
   At the hearing of a cause in admiralty before the court, the testimony should be taken down in full for use in the appellate court in case of appeal. If there is no official stenographer, one should be procured by counsel under the sanction of the court.

2. SHIPPING—CARRIAGE OF GOODS—IMPLIED WARRANTY OF FITNESS OF SHIP.
   In every contract of affreightment between a shipowner and shipper, there is an implied warranty that the ship is seaworthy at the beginning of the voyage for the particular cargo to be carried.

8. SAME—DAMAGE TO CARGO—UNSEAWORTHINESS.
   Evidence *held* to sustain the finding of a trial court that damage by water to a cargo of cement carried between decks on a voyage from New York to Wilmington, N. C., was due to the defective condition of the calking of the upper deck, which existed at the commencement of the voyage, and rendered the vessel unseaworthy with reference to the particular cargo.

Appeal from District Court of the United States for the Eastern District of North Carolina, at Wilmington.

For opinion of District Court, see 116 Fed. 80.

Thomas Evans, for appellant.

George Rountree, B. G. Empie, S. M. Empie, and J. O. Carr, for appellee.

Before GOFF and SIMONTON, Circuit Judges, and McDOWELL, District Judge.

SIMONTON, Circuit Judge. This case comes up on appeal from the District Court of the United States for the Eastern District of North Carolina, in admiralty.

The three-masted schooner Nellie Floyd, up for a voyage from New York to Wilmington, N. C., on the 9th of March, 1902, received on board 8,000 bags of cement and 1,000 barrels of cement, consigned to the Coal, Cement & Supply Company. The bill of lading stated the receipt of the cement in apparent good order and well conditioned; noting 100 barrels stained and damaged, to be delivered in like order and condition, dangers of the sea, fire, and collision excepted, to the consignees at Wilmington. The voyage was accomplished, and the cargo taken out of the schooner. Upon delivery it was ascertained that 62 barrels and 1,861 bags of cement, not including those noted in the bill of lading, had been damaged by water and rendered perfectly useless. Thereupon the Coal, Cement & Supply Company filed its libel against the schooner for the value of the damaged cement, for the sum of $936.65. On the other hand, H. Neilson, the master of the schooner, filed his libel against the Coal, Cement & Supply Company for the balance due on freight contracted for under the bill of lading, for $99.55, and for seven days' demurrage caused by the failure to pay the stipulated freight, at $40 per day, $280—in all, $349.55.

The causes were consolidated. The testimony was taken before the court, in the notes of the presiding judge, and after argument the court entered a decree for the original libelants, practically dismissing the cross-libel of the respondent to the original libel. An appeal was allowed, and the cause was removed into this court on assignments of error. Pending the appeal the respondent in the original libel (appellant here) applied to the district judge for his notes of the testimony. Receiving these notes and examining them, he conceived that certain important testimony had not been noted. He called the attention of the judge to these omissions, and for reply was informed that the notes were not full, were not intended to be a part of the record, and were taken simply for his own convenience. Thereupon the proctor of the claimant attempted to prepare a minute of the testimony taken, and submitted it to the counsel for the libelant, who refused to admit it. He then applied to one of the circuit judges for leave to re-examine the witnesses. This application was granted under the express condition that this court be asked for permission to introduce the new testimony so taken, and, if such permission was refused, the costs of taking the testimony be paid by the appellant. This testimony was taken, and comes up with this record.

At the hearing the appellee moved to dismiss the appeal upon two grounds: First, because the testimony taken at the hearing below was not reduced to writing, and so does not and cannot appear in the record. It is alleged, and not denied, that his honor below took notes of the testimony as it was delivered, but that these notes were not full, and, indeed, were not intended to be a part of the record. It is a bad practice to take testimony at the hearing of a cause in admiralty, without taking proper precaution that it be taken accurately and in full. If there be no official stenographer in attendance on the court, counsel should take measures looking to a full stenographic report of the testimony under the sanction of the court. This is often done, and the practice meets our approval. When such a cause comes here, we pass on the facts as well as the law, and this court cannot do this in the absence of or with an imperfect report of the evidence. The second ground for dismissing the appeal is that the testimony taken pending the appeal, being practically a re-examination of the witnesses, should not be heard.

The motion to dismiss having been argued and submitted, before a decree thereon, with the consent of counsel, the case was restored to the docket for the argument upon the merits, upon an agreed statement in writing of the facts, bearing the approval of the district judge.

It appears that the schooner Nellie Floyd, upon her voyage from New York, encountered severe weather, with high winds and waves; the latter occasionally sweeping her deck. When she reached Wilmington, she was duly surveyed, and upon the survey it was found that her hatches had been carefully and properly secured, and that no water had entered the hatches. There was little or no water in her hold. It was also in evidence that all the cargo below decks was uninjured by water, and that only the cargo between decks was damaged. It also appears from the testimony that some of the seams of the deck

were open, and it was observed when she reached Wilmington that rain water fell freely through the deck into between-decks. The preponderance of the evidence is that the deck was not properly calked, or, if it had been, the calking had become imperfect. There is no doubt that, so far as her hull is concerned, the schooner was seaworthy, and could have carried safely a cargo not susceptible to injury by water. But by the bill of lading she had contracted to carry safely a cargo of cement, peculiarly susceptible to injury from water. In all contracts of affreightment, there is an implied warranty that the ship is seaworthy. It is a contract between the vessel and the shipper, and the contract with the shipper is that the vessel is seaworthy for the special cargo which he ships. Steel v. The State Line S. S. Co., 8 Appeal Cases, 72; The Northern Bell, 9 Wall. 526, 19 L. Ed. 746. It may be that for many—perhaps for most—purposes a vessel may be seaworthy. In this particular case, as shown by the record, she could safely carry a cargo of lumber. But was she seaworthy in carrying a cargo of cement between decks? It would be enough to excuse the vessel if this seaworthiness existed at the time the voyage had begun. If, by stress of weather, or other causes in the exception of the bill of lading, her seaworthiness was diminished, the vessel would not be liable. Now, it is clear that when she reached Wilmington the deck of the schooner—her upper deck—was leaking. She was an old vessel, and her calking was found imperfect. Was this the case when she left New York? There is no direct evidence on this point. The only testimony is that generally she was seaworthy. The stress of weather to which she was subjected did not strain her timber, nor open the seams of her hull, or disarrange her hatches. There is nothing to show that the tempestuous voyage opened the seams of her upper deck. It is reasonable to conclude that the condition of things that existed at Wilmington must have existed at her port of loading. The trial judge found this to be the case, and, in the absence of evidence to the contrary, we adopt his view of the matter.

The decree of the court below is affirmed.